UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Corrin F. Bowers, III and Gary L. Youmans, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>United States Department of Agriculture, Risk Management Agency, and Federal Crop Insurance Corporation,<br><br>Defendants. | Case No. 9:26-cv-00191-DCN<br><br>**CLASS ACTION COMPLAINT** |

## INTRODUCTION

1. This is a civil action for declaratory and injunctive relief, damages, and other appropriate relief brought by farmers and agricultural producers (collectively, "Plaintiffs") who purchased and maintained crop insurance policies issued through the Federal Crop Insurance Corporation ("FCIC") administered by the Risk Management Agency ("RMA"), a division of the United States Department of Agriculture ("USDA"), and were improperly denied indemnity payments following the wind and rain caused by Hurricane Helene.

2. Following Hurricane Helene's landfall, many insured farmers experienced conditions which triggered insurance coverage which had been purchased to pay when hurricane and tropical storm wind and rainfall meet threshold levels. However, the USDA and RMA collectively issued determinations that ignored damages on the ground, ignored USDA serviced weather readings, and ignored the protocol employed by NOAA when

there are power outages. This willful blindness of the triggering elements by the insurers prevented farmers from receiving the insurance benefits they were owed under the Federal Crop Insurance Program.

3. Plaintiffs bring this action on behalf of themselves and all similarly situated farmers and agricultural producers across the affected regions whose crop insurance claims were improperly denied, reduced, or otherwise adversely impacted by Defendants' flawed determinations concerning the actual wind and rainfall from Hurricane Helene.

4. Plaintiffs seek relief under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706, the Fifth Amendment of the U.S. Constitution (Due Process), unjust enrichment, and principles of contract and equitable estoppel.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action by virtue of 5 U.S.C. § 701, *et seq.;* 7 U.S.C. § 1506(d), 7 U.S.C. § 6999; 28 U.S.C. § 1331; and, 28 U.S.C. § 2201. Sovereign immunity has been waived by Defendants pursuant to 5 U.S.C. § 702 and by 7 U.S.C. § 6999.

6. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(e), 28 U.S.C. § 1402 (a)(1), and 7 U.S.C. § 1506(d) because the events giving rise to the claims herein occurred within this judicial district, class representative Plaintiffs reside in this judicial district, and the Plaintiffs' farms are located within this judicial district. Further, the terms of the Common Crop Insurance Policy for 2024 include a forum selection clause, which selects the federal district court where the subject farms are located.

## PARTIES

7. Corrin Fitts Bowers, III is a resident of Hampton County, South Carolina, and is a farmer who, through himself and his farm entities, purchased federal crop insurance through a USDA-approved insurance provider. Plaintiff's rights to benefit were triggered due to Hurricane Helene and filed a timely claim under his/her crop insurance policy, which was subsequently denied due to USDA/RMA's determination regarding wind and rain that occurred in Hampton County and/or neighboring counties.

8. Gary L. Youmans is a resident of Hampton County, South Carolina, and is a farmer who, through himself and his farm entities, purchased federal crop insurance through a USDA-approved insurance provider. Plaintiff's rights to benefit were triggered due to Hurricane Helene and filed a timely claim under his/her crop insurance policy, which was subsequently denied due to USDA/RMA's determination regarding wind and rain that occurred in Hampton County and/or neighboring counties.

9. Defendant United States Department of Agriculture (USDA) is a federal executive department responsible for developing and executing federal laws related to farming and agriculture, including overseeing the Risk Management Agency.

10. Defendant Risk Management Agency (RMA) is an agency within the USDA tasked with administering the Federal Crop Insurance Program, including determining eligibility and disbursing insurance benefits for crop damage.

11. Defendant Federal Crop Insurance Corporation ("FCIC") is a wholly government-owned corporation created by the Federal Crop Insurance Act, 7 U.S.C. §1501, *et. seq.* (the "FCIA"), which is administered by the USDA through the RMA.

## FACTUAL ALLEGATIONS

10. On September 27, 2024, Hurricane Helene made landfall in the Southeastern United States, causing extensive wind and weather-related damage across multiple counties.

11. Plaintiffs and other Class Members experienced widespread damage to insured crops— specifically wind and rainfall damage that rendered the crops unmarketable or significantly reduced yields.

12. Plaintiffs filed crop insurance claims through their USDA-authorized crop insurance provider, in accordance with all policy terms and deadlines.

13. Relying on incomplete weather assessments and determinations issued or influenced by USDA and RMA, crop insurance providers denied payouts, specifically Plaintiffs were denied benefits from a hurricane and tropical storm coverage known as a HIP-WI endorsement payouts, for claims related to wind and rainfall from Hurricane Helene, asserting either that no qualifying wind or rainfall events occurred or that the cause was excluded or minimized based on non-transparent or scientifically flawed analyses.

14. To trigger payment of hurricane coverage benefits pursuant to FCIC policy terms, the threshold for wind speed is 64 MPH winds. To trigger payment of tropical storm benefits pursuant to FCIC policy terms, the threshold for wind speed is 34 MPH winds and there is a threshold for rain of 5.9 inches over a proscribed period of time.

15. The denials of benefits for these coverages were contrary to physical evidence, eyewitness reports, meteorological data, known industry standards for assessment of severity of weather, later conclusions by the same entities who formed the basis of the premature denial, and independent agronomic assessments showing severe wind and rainfall consistent with crop insurance coverage criteria.

16. USDA and RMA state that the insurers look to National Oceanic and Atmospheric Administration ("NOAA") for the weather threshold determinations.

17. The National Hurricane Center is a division of the National Weather Service which is an organization inside NOAA.

18. When Hurricane Helene struck the South Carolina lowcountry and the coastal empire section of Georgia, the weather was so violent that most, if not all, of NOAA's official weather stations in the relevant area were rendered inoperable.

19. Defendants acknowledged this fact.

20. Defendants further acknowledged in correspondence with Plaintiffs that it was understood that necessary wind thresholds were met.[1]

21. NOAA has stated that proper procedure is to supplement official channel weather data with data and observations from external channels.

22. The NOAA's own website states that "[o]bservations of precipitation can come from automated gages, which report by satellite or modem, *and also manual observations.* Automated gages are particularly helpful for determining the precipitation rate...*Volunteer observers help fill in gaps where precipitation data is lacking, which directly impacts the accuracy of NWS river, flood and drought forecasts.*"

23. NOAA acknowledges that its accuracy is dependent upon a diverse array of sources in multiple places.[2]

---

[1] **As you stated, Hampton and Jasper counties did meet the wind speed requirements**; however, they did not meet the rainfall amounts. Email from Davina Lee, Regional Director of RMA prior to release of additional data concerning rainfall.

[2] See "Not all information comes from official sources. A large portion of rainfall information used by the National Weather Service comes from volunteer observers." https://www.weather.gov/lot/hydrology_education_observations?utm_source=chatgpt.com

5

24. NOAA did not follow the normal practices nor did the insurer act in good faith in the weather determinations that allegedly supported the denials of benefits.

25. Local weather stations that were not rendered useless by the storm that are inspected and maintained by the USDA plainly and unequivocally showed threshold weather requirements were met.

26. Physical weather events that could not occur without threshold weather being present occurred all over counties that were denied benefits the farmers had paid to receive in this scenario. These events included flooding that necessitated a prerequisite amount of rainfall that was above the policy threshold as well as tree and structural damage that required threshold wind amounts for this damge. Personal observations and photographic evidence documented the reality on the ground.

27. Instead, RMA and USDA, knowing the information was flawed and contradicted by all reliable local data, chose to cover their eyes and ears and employ the incomplete and premature data from NOAA as basis for the denial.

28. Amplifying this impropriety, subsequent to the arbitrary denial of benefits based on incomplete and flawed information, the National Hurricane Center (NHC) released its Tropical Cyclone Report for Hurricane Helene (AL092024) on March 19, 2025, which admits and concedes that there is objective documentation of high winds and heavy rainfall in numerous counties.

29. As an example, the report, issued by a division of NOAA and endorsed on every page by NOAA, includes reference to tables. Below is one of the tables contained in the report directly contradicting denial of coverage.

**Highest 10 Rainfall Totals**

| Station | State | Type | Inches |
|---|---|---|---|
| Hampton/Varnville Meteorological Sta | SC | USGS | 8.69 |
| Hampton 0.2 SW | SC | CoCoRaHS | 8.15 |
| Hampton 0.8 SW | SC | CoCoRaHS | 7.80 |
| Hampton 2.7 WNW | SC | CoCoRaHS | 7.33 |
| Furman - Youmans Farm | SC | SCAN | 7.21 |
| Abercorn Creek near Savannah (At Mo | GA | USGS | 6.73 |
| Hunter Army Airfield | GA | ASOS | 6.55 |
| Lodge 3.4 SW | SC | CoCoRaHS | 6.41 |
| Middle River at Port Wentworth (Fish | GA | USGS | 6.01 |
| Savannah River near Port Wentworth (GA) | | USGS | 5.99 |

30. This data alone would support the payment of benefits to farmers who have received denials for endorsements that were costly.

31. This is only one example of many establishing the arbitrary nature of the process employed, the denial of the paid for benefits and the incompatibility with what has occurred to all of the class of farmers compared to what is properly required by good faith application of the terms of a contract of insurance.

32. Still, the insurer Defendants, administering the FCIC policies, continued to deny coverage despite their basis being flatly contradicted by the very source claimed for the denial.

33. Defendants have made vague allusions in informal meeting with farmers to an extrapolated grid system but have failed to provide critical details concerning what and how that extrapolation was created, what data was included, why the data was selected for inclusion, what data was not considered, and why that data was not included.

34. For example, in Hampton County, correspondence with Plaintiffs from Defendants stated that only one data point located within Hampton County was used to calculate rainfall totals.



35. Inexplicably, this lone station rendered readings of rainfall totals far in excess of the threshold requirement.
36. Defendants failed to provide a fair, transparent, and scientifically supported basis for their blanket denials or minimization of wind and rainfall, constituting arbitrary and capricious agency action under the APA.
37. As a result, Plaintiff and other farmers were deprived of insurance benefits they were legally entitled to, undermining their financial stability and breaching the core purpose of the Federal Crop Insurance Program.
38. To further undermine the core purpose of the program, the provided for appeal has been an exercise in futility with no process, no explanations, and government's failure to follow proscribed procedure.

39. The Defendants have stated that the insurance policy at issue dictates that 7 C.F.R. § 11 establishes and defines the rights of administrative appeal. Following an administrative appeal, there is a right to bring a lawsuit.

40. Pursuant to the procedures provided within the policy, In January of 2025, Plaintiffs sent correspondence and an appellate filing under NAD to Defendants and requested a mediation.

41. Defendants advised Plaintiffs that the Defendants would not mediate this case and that Plaintiffs should file an appeal of the decision.

42. Plaintiffs then filed an appeal of the refusal to provide the farmers the benefits.

43. Despite this filing and the statutory process requiring a response, the Defendants did not and have not responded with any defense of the actions as required by 7 C.F.R. § 11

44. Despite this filing and follow up requests for status, there has been no hearing.

45. The failure to provide a response or a hearing are admissions that no valid response exists to defend the deviation from standard practices to employ a premature and incomplete weather assessment as a basis for refusal to provide benefits under policies that have been purchased for valuable consideration.

46. Finally, on Saturday, January 17, 2026, long after the time to respond, the National Appeals Division contradicted its original correspondence with Plaintiffs and states that the appeals of many of the affected farmers are denied because these decisions are not the type of claims that are able to be appealed.

47. Plaintiffs have exhausted their administrative remedies and the proper procedure for the administrative process has been ignored by the Defendants.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action on behalf of all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure.

49. In 2020, the Defendants made an endorsement known as the HIP-WI endorsement available to class members. Later, in 2023, the tropical storm endorsement was added. Both of these coverages operate with the same basic principles but provide different levels of payment at different thresholds.

50. The HIP-WI endorsement, when purchased, provides benefits when certain threshold weather conditions are met.

51. The HIP-WI endorsement benefit is not computed like traditional property insurance clauses. If a producer is living in a county that experiences the threshold amounts of wind or rainfall or lives in a county that is adjacent to a qualifying county, the policy pays the benefit in a predetermined amount for the acreage covered.

52. Because of the nature of the benefit, there is no need for any after the fact individual determinations of whether and to what extent each grower has suffered damage. This makes this dispute particularly suitable for class treatment.

53. The Class is made up of farmers in South Carolina and Georgia along the path of Helene who were in counties that were errantly and arbitrarily denied benefits. The Class is defined as:

> "All farmers and agricultural producers in the United States who purchased crop insurance through the Federal Crop Insurance Program and also purchased the HIP-WI endorsement and who, live in a qualifying area that experienced qualifying rainfall and/or wind due to Hurricane Helene, filed claims for such

losses, and were denied full or partial insurance payments as a result of USDA or RMA's errant wind and rainfall determinations."

54. The Class is so numerous that joinder of all members is impracticable. Upon information and belief, the Class includes hundreds if not thousands of affected farmers across multiple states.

55. Common questions of law and fact exist, including but not limited to:

- Whether Defendants' wind and rainfall determinations related to Hurricane Helene were arbitrary and capricious;
- Whether the Defendants failed to follow their own procedures;
- Whether Plaintiffs and Class Members were denied insurance benefits they were entitled to;
- Whether due process rights were violated by the lack of transparency and failures in process.

56. Plaintiffs' claims are typical of those of the Class. The claims stem from a common contract and fact pattern.

57. Plaintiffs will fairly and adequately protect the interests of the Class. They have no interest antagonistic to other members of the class. Plaintiffs have retained competent counsel experienced in complex litigation and class actions including class actions on behalf of farmers.

58. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Among other reasons:

   a. Management of a single action will be more efficient than multiple actions all proceeding at the same time, all concerning the same common nucleus of operative fact;

   b. The class is ascertainable. Identifying those who purchased the effective policy in the geographic area in question simply requires an examination of regularly kept records;

c. Damages are predetermined if the policy is in effect and damages are all set according to a common formula;

d. A single proceeding increases the likelihodd of fair results for all rather than multiple claims or lawsuits yielding varying results;

e. Concentration of this action in a single action allows the parties to streamline the process for trial or resolution.

## CLAIMS FOR RELIEF

## FOR A FIRST CAUSE OF ACTION

### Violation of the Administrative Procedure Act (5 U.S.C. § 706)

59. Plaintiffs reallege and incorporate the above allegations.

60. Following Hurricane Helene's devastation, many farmers filed claims for HIP-WI benefits for which valuable consideration was given.

61. Instead of following normal protocol to gather the best and most complete weather data, the Defendants denied Plaintiffs claims based on premature and incomplete information.

62. Defendants' conduct constitutes final agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with the law, including the laws governing insurance or contract. Following the denials based on incomplete and flawed data, the appeal has not followed any normal or reasonable process.

63. Plaintiffs are entitled to declaratory and injunctive relief reversing the improper determinations and compelling reconsideration of their claims using appropriate standards.

## FOR A SECOND CAUSE OF ACTION

### Violation of Due Process (U.S. Constitution, Amendment V)

64. Plaintiffs reallege and incorporate the above allegations as if specifically restated herein.

65. Plaintiffs had a protected property interest in receiving crop insurance benefits under their federal policies.

66. Defendants deprived Plaintiffs of this interest without adequate process, notice, opportunity to contest the wind or rainfall damage determinations, or appeal rights.

67. The denial of the protected property interest is not supported by fact or law and the appeal rights ostensibly provided are governed by procedure that the Defendants have failed to follow.

68. The amounts due are based on known formulas and are a sum certain.

69. As a result, the Plaintiffs are entitled to the full benefits and any other relief to which they may be justly entitled.

## FOR A THIRD CAUSE OF ACTION

### Breach of Express and Implied Contract/Equitable Estoppel

70. Plaintiffs reallege and incorporate the above allegations as if specifically restated herein.

71. Plaintiffs paid premiums and purchased an insurance policy. The purpose of the purchased endorsement was to provide farmers with a benefit when their farms are hit with excessive rainfall or wind. Plaintiffs complied with all policy terms expecting that Defendants would evaluate claims fairly and in accordance with program regulations.

72. General principles of both insurance law and contract law apply in the administration of the crop insurance policies at issue.

73. The law governing insurance contracts has stated explicitly that the relationship between an insurer and its insured is "special," more so than parties in a mere contractual relationship.

74. There is a covenant of good faith and fair dealing that exists in the Plaintiffs' contract for insurance.

75. An insurer cannot simply ignore facts that support the payment of benefits and choose to deny payment based on out of context or cherry picked facts.

76. Defendants ignored a broad array of facts that supported the claims of the farmers.

77. Defendants' actions frustrated the fundamental purpose of the contract and insurance agreement.

78. Defendants actions include the acknowledgment and delivery of benefits to other farmers in other areas without distinguishing any difference or providing justification while at the same time wrongfully withholding benefits due Plaintiffs.

79. As an example, of the 159 counties in Georgia, only a handful of counties were denied benefits. All of these counties which were denied benefits are located on the more fierce (east) side of the hurricane system.

80. The geographic and meteorological disconnect from all known weather patterns and assessment aids further highlights the arbitrary nature of the Defendants' denials of benefits which were due.

81. While Defendants assert that NOAA determinations shall govern any determination of whether threshold amounts of rainfall and wind have occurred, NOAA policy of

employing all data available to make the most accurate record of the weather was ignored.

82. Defendants willful ignorance and deviation from normal practices have damaged the Plaintiffs in the deprivation of monies to which they were entitled.

83. The amounts due are based upon known formulas and are a sum certain.

84. As a result, Plaintiffs are entitled to all damages as a result of Defendants' actions. This includes all damages, direct and consequential, as well as interests, costs and any other relief to which they may be justly entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully

request that this Court:

A. Certify the proposed Class;

B. Declare that the Defendants' threshold determinations regarding Hurricane Helene were

arbitrary, capricious, and contrary to law;

C. Award compensatory damages in an amount to be determined at trial;

D. Award attorney's fees and costs under applicable law;

F. Grant such other and further relief as the Court deems just and proper.

By: s/ A. Gibson Solomons, III
A. Gibson Solomons, III (Fed. ID # 7769)
SPEIGHTS & SOLOMONS, LLC
100 Oak Street East
Post Office Box 685
Hampton, SC 29924
803-843-4444
803-943-4599 (fax)
gsolomons@speightsandsolomons.com

*Attorneys for Plaintiffs*

January 20, 2026
Hampton, South Carolina